IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE MISER,

        Plaintiff,

v.                                                                           Case No. 23-1265-JWB

FREIGHT LOGISTICS, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion for default judgment (Doc. 5.) Defendant has not filed a response. For the reasons stated herein, Plaintiff's motion is GRANTED.

**I.    Facts**

Plaintiff filed her Complaint (Doc. 1) on December 14, 2023, bringing two claims for wrongful termination under the Americans with Disabilities Act ("ADA"), and one claim for defamation under Kansas state law. She exhausted her administrative remedies and received a Notice of Right to Sue from the Equal Employment Opportunity Commission on September 24, 2023.

Plaintiff worked as a truck driver for Defendant. Defendant is a trucking company that is incorporated in Kansas and has its principal place of business there as well.

In the spring of 2022, Plaintiff became concerned she had an irregular heartbeat and scheduled an appointment with her primary care doctor. Her primary care doctor referred her to a cardiac specialist, and her first appointment was scheduled on or around June 9, 2022. Plaintiff was scheduled to deliver freight for Defendant on or around June 14, 2022. Plaintiff successfully delivered the freight, and she dropped her unloaded truck at a truck stop in Nevada, Missouri. This

1

was a planned drop, as Plaintiff would leave her truck and the trailer at the truck stop until her next scheduled delivery.

However, on June 15, 2022, Plaintiff's cardiologist informed her that it would be medically unsafe for her to work until she received further evaluation at Mercy Cardiology. The cardiologist informed her of this prognosis by sending a note. Plaintiff followed Defendant's protocol by informing the dispatcher that she was leaving the truck, as she could not safely drive with her medical condition. Plaintiff also informed Defendant about her medical status; she gave Defendant her doctor's note and told Defendant that she would provide regular updates on when she could return to work. Defendant sent a driver to pick up Plaintiff's truck.

Plaintiff was diagnosed with arrythmia and a slight murmur. In August of 2022, she underwent a cardiac procedure that successfully resolved these issues. Plaintiff was cleared to work around the end of November 2022. However, when she contacted Defendant about being cleared to work again, Defendant informed her that she would have to re-apply for the position because she had been out-of-work for more than 30 days. Plaintiff reapplied and was informed she was ineligible for the position because she had abandoned her truck in June. Additionally, Defendant added to Plaintiff's Drive-A-Check Report ("DAC")[1] that she had abandoned her truck while working for Defendant.

Defendant was aware that Plaintiff had not abandoned her truck and that she had followed correct protocol once she learned it was unsafe for her to drive. Defendant also knew that reporting on Plaintiff's DAC that she abandoned her truck would negatively impact her professional reputation and future employment opportunities as a truck driver.[2]

---

[1] A DAC has information about a truck driver's employment history. It is common in the trucking industry, and trucking companies routinely check these reports when drivers apply for jobs.
[2] The facts contained herein are from Plaintiff's complaint. (Doc. 1.)

2

II.     **Standard**

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. The party must first seek an entry of default from the clerk and then move for default judgment with the court. *Id.* The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). Because Defendant failed to answer, plead, or otherwise defend this action, it is deemed to have admitted the factual allegations of the complaint as true. *Id.* at 1125.

Before entering default judgment against Defendant, the court also has an affirmative duty to look into its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").

Turning to the merits, once default is entered Defendant is not entitled to defend itself on the merits and the court must determine whether Plaintiff's allegations, which are taken as true, state a claim against Defendant. *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014). If there is a sufficient basis for default judgment, that judgment establishes only liability. *See, e.g., Hermeris, Inc.*, 2012 WL 1091581, at *1. "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)).

**III.   Analysis**

Plaintiff sought and received an entry of default from the clerk.  (Docs. 4, 6.)  Thus, this court proceeds to the analysis of whether it has jurisdiction in this case and if Plaintiff's factual allegations sufficiently state a claim against Defendant.

**A.  Jurisdiction**

For Plaintiff to prevail on her motion for default judgment, the court must have subject matter jurisdiction over the claims and personal jurisdiction over Defendant.  The court considers each in turn.

*1.  Subject Matter Jurisdiction*

A federal court "has an affirmative duty to determine whether it has subject matter jurisdiction" prior to issuing a default judgment.  *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1161 (D. Kan. 2018) (quoting *Olivas v. Bentwood Place Apartments*, LLC, No. 09-4035-JAR, 2010 WL 2952393, at *6 (D. Kan. July 26, 2010)).  One of the statutory bases for subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003), *opinion reinstated in part*, 440 F.3d 1227 (10th Cir. 2006).  "Federal question exists for all claims 'arising under the Constitution, laws, or treaties of the United States.'"  *Id.* (quoting 28 U.S.C. § 1331).  A case arises under federal law when (1) the federal question appears on the face of a well-pleaded complaint, and (2) the cause of action is created by federal law.  *Rice v. Off. of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001).

Here, Plaintiff alleges two ADA claims on the face of her complaint: disability discrimination and retaliation.  Second, the ADA, which is federal law, created Plaintiff's claims.  Thus, the court has federal subject matter jurisdiction over Plaintiff's ADA claims.

However, Plaintiff also alleges Defendant defamed her. A federal district court may exercise supplemental jurisdiction over state law claims that are so related that they form part of the same case or controversy over which a court has original jurisdiction. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1162 (D. Kan. 2018) (citing 28 U.S.C. § 1367). Moreover, federal question jurisdiction is a form of original jurisdiction. *See id.* Here, the court has original jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331. The court also has supplemental jurisdiction over Plaintiff's defamation claim because it arises from and forms part of the same case and controversy as her ADA claims. The factual basis for all of Plaintiff claims is the discovery of her heart conditions and how that discovery affected her employment with Defendant. When Plaintiff's cardiologist determined she had arrythmia and a slight murmur, she could not safely drive her truck. She then left it at a truck stop in Nevada, Missouri, and took time off work until her surgery and subsequent recovery. Plaintiff's heart conditions forced her to take time off work, which in turn, led to her termination as a truck driver for Defendant, her re-application for that position, and ultimately, her disqualification for that position because she allegedly abandoned her truck. Defendant then reported that Plaintiff abandoned her truck on her DAC—which is the basis for her defamation claim. Plaintiff's three claims arise from these operative facts, and because the court had original jurisdiction over Plaintiff's ADA claims, the court can properly exercise supplemental jurisdiction over her defamation claim.

### 2. *Personal Jurisdiction*

The court must also determine if it has personal jurisdiction over Defendant. Personal jurisdiction is established via a two-step process: "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise

of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

Under the first step, the applicable statute governing service of process in this case is Fed. R. Civ. P. 4(h) because Defendant is a domestic corporation that is incorporated in Kansas. *Peay*, 205 F.3d at 1210. Under Rule 4(h), a domestic corporation is properly served "in a judicial district of the United States" and "by delivering a copy of the summons and of the complaint to an . . . agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h). Plaintiff delivered a copy of the summons and complaint to an individual authorized by law to accept service of process for Defendant. (Doc. 3.) Hence, Plaintiff properly served Defendant pursuant to the applicable statute.

Regarding the second step, a defendant must have minimum contacts with the forum state to satisfy due process. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The minimum contacts test ensures that it is reasonable for a defendant to defend a suit in a particular forum. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021). There are two types of personal jurisdiction: specific and general. *See id.* At issue here is general jurisdiction, which arises when a defendant's continuous contacts with the forum state render it "'essentially at home' there." *See id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Supreme Court has determined that a corporation is subject to general jurisdiction in the forum where it is incorporated or has its principal place of business. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Under these two scenarios, a defendant corporation's contacts with the forum would obviously render it at home for personal jurisdiction purposes. Here,

Defendant is both incorporated and has its principal place of business in Kansas. Thus, this court's exercise of general jurisdiction over Defendant comports with due process.

**B.    Plaintiff's Claims Against Defendant**

To prevail on default judgment, a plaintiff must also allege facts sufficient to state her claims against a defendant.

*1. ADA Disability Discrimination*

Disability discrimination under the ADA requires that "(1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). The ADA defines disability three ways, and the definition applicable here is the first: "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Working is considered a major life activity, so the inability to work because of a physical impairment could be considered a disability under the ADA. *See Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1091 (10th Cir. 2007).

Under the standards for default judgment, the court has determined that Plaintiff successfully alleged she had a disability under the ADA. The facts in Plaintiff's complaint also demonstrate that she was qualified for her job as a truck driver prior to her disability, and that after an accommodation of medical leave, she was again qualified for her position after the surgery resolved the disability. Lastly, Plaintiff alleges facts sufficient to create an inference that Defendant discriminated against her on the basis of her disability. Defendant terminated Plaintiff's employment during the period she could not work because of her disability. Moreover, Defendant

also refused to re-hire her because Plaintiff left her truck in Missouri due to her disability. Thus, the court concludes Plaintiff successfully stated a claim of discrimination against Defendant.

### 2. ADA Retaliation

For the ADA retaliation claim, Plaintiff must allege facts showing "that (1) [s]he 'engaged in a protected activity'; (2) [s]he was 'subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.'" *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).

Plaintiff successfully pleads her ADA retaliation claim. She engaged in protected activity by reporting her disability and requesting an accommodation of short-term medical leave to resolve her disability in June of 2022. Next, she was subject to an adverse employment action after engaging in the protected activity because Defendant terminated her employment in November 2022. Lastly, there is an inference that Defendant terminated her employment because she requested short-term medical leave to resolve her disability, and during the time she could not work because of her disability, Defendant terminated her employment. Thus, the court concludes Plaintiff successfully states a claim of retaliation against Defendant.

### 3. Kansas State Law Claim of Defamation

In Kansas, a claim for the tort of defamation has three elements: (1) false and defamatory words were uttered or written,[3] (2) the false and defamatory words were communicated to a third person, and (3) the plaintiff's reputation was injured because of the defamatory remarks. *See Dominguez v. Davidson*, 266 Kan. 926, 931, 974 P.2d 112, 117 (1999).

---

[3] In Kansas, the single tort of defamation includes both libel and slander. *See Marcus v. Swanson*, 317 Kan. 752, 756, 539 P.3d 605, 609 (2023).

Here, Plaintiff has alleged facts sufficient for a claim of defamation against Defendant. Defendant's statement about Plaintiff abandoning her truck was false. Defendant then published this statement to third parties by reporting it on Plaintiff's DAC. Lastly, Plaintiff's reputation and job prospects in the trucking industry were harmed as a result of this statement because other companies rely on DACs when considering drivers and abandoning a truck is a demerit on her overall driving record. Accordingly, for the purposes of this default judgment, the court holds Plaintiff has successfully stated a claim against Defendant for the tort of defamation.

## IV. Conclusion

IT IS THEREFORE ORDERED BY THE COURT THAT Defendants' motion for default judgment (Doc. 5) is GRANTED. To determine the issue of DAMAGES, a hearing is set for **April 4, 2024, at 1:30 p.m., U.S. Courthouse, Wichita, Kansas, Courtroom 238.**

IT IS SO ORDERED. Dated this 25th day of March, 2024.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE