IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE MISER,

        Plaintiff,

v.                                      Case No. 23-1265-JWB

FREIGHT LOGISTICS, INC,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's requested damage award and motion for attorney's fees. (Doc. 12.) On March 25, 2024, the court issued entry of default judgment in favor of Plaintiff Michelle Miser. (Doc. 6.) The court set a hearing for the matter of damages for April 29, 2024. Plaintiff appeared in court and presented evidence in support of a requested damage award. Following Plaintiff's testimony, the court took the matter under advisement. Plaintiff subsequently filed a motion for attorney's fees. (Doc. 12). Defendant has failed to participate in the proceedings, so Plaintiff's request for damages and attorney's fees is ripe for decision. Having heard Plaintiff's testimony and considered the post-hearing briefing, the court awards Plaintiff a judgment of $129,846.73. Additionally, Plaintiff's motion for attorney's fees and costs (Doc. 12) is GRANTED IN PART.

**I. Analysis**

On December 14, 2023, Plaintiff filed her Complaint bringing claims for discrimination and retaliation in violation of the ADA, and for defamation in violation of Kansas state law. (Doc. 1.) For her ADA claims, Plaintiff seeks an award of back pay, compensatory damages, punitive

damages, and reasonable attorneys' fees and expenses.[1] For her defamation claim, Plaintiff seeks an award of nominal damages, general damages, damages for special harm, and punitive damages.[2]

### A.     ADA Damages

For Plaintiff's wrongful termination, the ADA allows her to recover back pay, front pay,[3] compensatory damages and punitive damages up to the applicable statutory cap, and reasonable attorneys' fees and costs. *See Mathiason*, 187 F. Supp. 3d at 1276-77. The statutory cap on compensatory and punitive damages is determined based on the size of the Defendant employer. 42 U.S.C. § 1981a(b)(3). At the hearing, Plaintiff presented evidence that at the time she worked for Defendant Freight Logistics, Inc. ("FLI") the company employed approximately 100 truck drivers, roughly 30 office staff, and 20 or more other employees (service workers, technicians, etc.). Plaintiff also testified as to another company, MBI, that shares common ownership with FLI, operates out of the same building, uses the same banking and payroll system, and has an integrated HR function with FLI. Based on Plaintiff's unrebutted testimony, the court finds that FLI and MBI are an "integrated enterprise," such that they constitute a single employer for purposes of employee counting and applicable damage caps. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1322-23 (10th Cir. 2004). Plaintiff testified that approximately 75 truck drivers are

---

[1] At the April 29 hearing, the court noted the existence of caselaw within this district that found compensatory and punitive damages to be unavailable remedies for ADA retaliation. *See Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1202 (D. Kan. 2001). Counsel for Plaintiff did not challenge that caselaw at the hearing, but noted that Plaintiff's claims for ADA discrimination and retaliation focus on the same wrongful act (Defendant's termination of Plaintiff's employment and subsequent failure to rehire her). Because the Court has granted judgment to Plaintiff on both her claims for discrimination and retaliation, and because the ADA allows for compensatory and punitive damages to remedy disability discrimination, *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1276-77 (D. Kan. 2016), the Court analyzes damages as to Counts I and II together and finds that Plaintiff may seek compensatory and punitive damages for Defendant's wrongful termination of her employment and failure to rehire her.

[2] In Kansas, defamation damages "traditionally involve five subparts: (1) nominal damages (a trivial sum of money awarded when a plaintiff has not established that he is entitled to compensatory damages), (2) general damages for harm to reputation (called general because they are generally anticipated, and hence do not need to be alleged), (3) damages for special harm (the loss of something having economic or pecuniary value, such as loss of business), (4) damages for emotional distress . . . and (5) punitive damages (to punish a defendant's outrageous conduct). *Marcus v. Swanson*, 539 P.3d 605, 609 (Kan. 2023) (citation and internal quotation marks removed).

[3] Plaintiff does not seek an award of front pay.

employed by MBI, and it shares the same office staff and service personnel as FLI. Therefore, the Court finds that the integrated FLI/MBI enterprise for which Plaintiff worked employs approximately 225 employees, so the statutory limit on compensatory and punitive damages for Plaintiff's ADA wrongful termination claims is $200,000.

   *1. Lost Wages*

Plaintiff testified that as a truck driver at FLI, she was paid by the mile. In a typical week at FLI, Plaintiff earned anywhere from approximately $1,100 to upwards of $1,500. Plaintiff presented a paystub from her final full week of employment with FLI, when she earned $1,336.78, and testified that that final week represented a typical week of earnings.

Plaintiff's last day of work for Defendant was June 15, 2022. Because of her disability, Plaintiff was unable to work from June 15, 2022 until mid-November 2022, so she is not entitled to lost wages for that period of time. Once she was able to return to work, Plaintiff contacted FLI around Thanksgiving, which in 2022 was on November 24. FLI then informed Plaintiff that her employment had been terminated, and it refused to rehire her. From the time FLI told Plaintiff she had been terminated, she was unemployed for approximately three weeks before finding a job with Transport Distribution Company ("TDC") in mid-December. The Court finds that Plaintiff is entitled to lost wages in the amount of $1,336.78 per week for her three weeks of unemployment, totaling $4,010.34.

Plaintiff's job for TDC was lower paying than her job with FLI. For the eleven weeks and one day (11.14 weeks) from the beginning of 2023 until March 20, 2023, when she became unable to work as a result of a truck accident for which she was not at fault, Plaintiff's W2 shows earnings of $9,943.70 at TDC. On average, Plaintiff earned $892.61/week ($9,943.70/11.14 weeks) at TDC. Based on the above, Plaintiff is entitled to lost wages of $444.17/week during her

employment with TDC. Plaintiff's evidence indicates that she worked for TDC for approximately the last two weeks of December 2022, and then for the first 11.14 weeks of 2023, totaling 13.14 weeks. As such, the Court finds that Plaintiff is entitled to lost wages of $5,836.39 during her employment with TDC.

In total, the Court awards Plaintiff $9,846.73 in lost wages.

*2. Compensatory Damages*

Plaintiff seeks an award of compensatory damages for emotional distress, humiliation, embarrassment, and frustration. At the hearing, Plaintiff presented evidence that prior to Defendant's action, she was in the trucking industry for approximately 15 years. During her tenure, Plaintiff developed a strong reputation across the industry, both with her employers and her fellow truck drivers. Defendant's actions in terminating Plaintiff and refusing to rehire her, and in particular its statement that it could not work with her due to her supposed "truck abandonment" caused Plaintiff significant personal and professional damage. Plaintiff testified that truck abandonment is a particularly damaging stated reason for her termination, because a driver abandoning her truck in anything but the most dire circumstances is anathema across the industry.

Plaintiff testified that she takes great pride in her work and the reputation she built up over more than a decade in the industry, and that she was angry and embarrassed to have that reputation ruined not only over her termination, but a false accusation of truck abandonment.

Plaintiff also testified that the termination has strained her family life, as her family had to rely solely on her spouse's income. The loss of income was damaging not only to Plaintiff's personal family relationships, but to her outside activities, in particular the non-profit animal rescue that she runs and personally makes up the funding gap for when donations fall short.

Based on the above, the Court finds an award of $50,000.00 appropriate to compensate Plaintiff for her mental and emotional distress, humiliation, embarrassment, and frustration.

3. *Punitive Damages*

Plaintiff seeks punitive damages because she alleges that Defendant's actions were taken with malice and reckless indifference to her protected rights. The Tenth Circuit "take[s] seriously the purpose of punitive damages, i.e., 'to punish what has occurred and deter its repetition.'" *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991)). Here, Plaintiff's unrebutted testimony indicates that in June 2022, Plaintiff (1) parked and secured her truck in accordance with Defendant's procedures, (2) notified Defendant that she had done so, (3) went to a doctor's appointment that led to a period of medical leave for her disability, (4) was told by Defendant that she just needed to let them know when she was able to return to work, and (5) was not told that she had done anything improper with her truck. Then five months later when Plaintiff attempted to return to work, not only was she told her employment was terminated, but she was also told that she was no longer eligible to return to work due to a false allegation of "truck abandonment" in June. Plaintiff's testimony indicates that truck abandonment is a clear black mark on her record within the truck-driving industry, and that Defendant would have known that it would significantly damage her opportunity to find comparable work elsewhere. Indeed, Plaintiff testified that as she looked for other work after FLI's actions, at least one other employer told her it could not hire her because it had learned (presumably from FLI) about her alleged abandonment.

Based on the foregoing, the Court finds an award of $50,000.00 in punitive damages appropriate to punish Defendant and deter similar wrongdoing in the future.

4. *Attorney's Fees, Expenses, and Costs*

*a. Entitlement*

Under the ADA, a court has the discretion to award the prevailing party "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. And absent "special" circumstances that would justify nonrecovery, the norm is that prevailing parties will recover them. *See Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1232 (10th Cir. 1997). Applicable here, the court in *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269 (D. Kan. 2016), held that a plaintiff was the "prevailing party" when it granted default judgment for her ADA claims. *See id.* at 1280.

Defendant has not participated in the proceedings, and the court has granted default judgment to Plaintiff. There are also no special circumstances in this case that would render attorney's fees and costs unjust. Thus, Plaintiff is the prevailing party and is entitled to *reasonable* attorney's fees, expenses, and costs.

*b. Attorney's Fees*

Pursuant to Federal Rule of Civil Procedure 54(2)(A), a party seeking to recover attorney's fees must do so by filing a motion. Plaintiff submitted a motion for attorneys' fees on May 6, 2024, thus satisfying the procedural requirement in Rule 54(2)(A). (Doc. 12.)

Next, the fee must be reasonable. *See Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). To determine a reasonable attorney's fee, a court finds the lodestar figure—which is the reasonable number of hours spent on a case multiplied by a reasonable hourly rate. *See Mathiason*, 187 F. Supp. 3d at 1280. A plaintiff bears the burden of demonstrating that the number of hours is reasonable, *see id.*, and typically, counsel must exercise "billing judgment" which is a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Ellis*, 163 F.3d at 1202 (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018

(10th Cir. 1996)). A court also has a duty to "exclude" hours that were not "reasonably expended." *See id.* The second prong to the lodestar analysis (i.e., a reasonable hourly rate) is determined by comparing the hourly rates requested "with rates 'prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation.'" *Mathiason*, 187 F. Supp. 3d at 1281. (citation omitted). A judge may also rely on his knowledge of the prevailing hourly market rates to determine if the amount requested hews closely to them. *See id.*

Plaintiff's evidence indicates that counsel billed 30.2 hours in this case. After reviewing the breakdown of the billing records in Document 12-2, the court finds that the number of hours billed was reasonable. The attorneys did not bill for work that was excessive, redundant, or otherwise unnecessary.

Plaintiff also requests reasonable hourly rates for the attorneys given their experience. Plaintiff's lead attorney is a partner at the firm representing Plaintiff and has spent nearly 17 years practicing law in Kansas, Missouri, and Illinois. (Doc. 12 at 2; Doc. 12-1 at 1.) Plaintiff alleges that he has been involved in many jury and bench trials and has worked on several appeals in the State of Missouri and in the Eighth and Tenth Circuits. (Doc. 12 at 2.) He requests a rate of $625/hour. (*Id.*) The associate attorney working on Plaintiff's case has been a lawyer for nearly three and half years. (*Id.*) He has extensive litigation experience and has successfully briefed and argued a case to Eighth Circuit Court of Appeals. (*Id.*) He requests an hourly rate of $375. (Doc. 12 at 2; Doc. 12-1 at 1.)

Broken down, the lead attorney billed 5.4 hours at $625/hour for a total $3,375.00, and the associate attorney billed 24.8 hours at $375/hour for a total of $9,300.00. In total, counsel requests $12,675.00 in attorney's fees. After the arguments and the supporting evidence, the court finds that the reasonable rate for the lead attorney in this district is $500 per hour; Plaintiff's other

requested rates and hours are reasonable. Accordingly, the court awards Plaintiff's counsel $12,000.00 in legal fees.

      c. *Litigation Expenses*

Like the process to recover attorney's fees, a party seeking to recover litigation expenses must also do so by filing a motion. Fed. R. Civ. P. 54(2)(A). Counsel satisfies this requirement because they requested litigation expenses in their motion for attorney's fees. (*See* Doc. 12 at 3).

Counsel requests $486.40 in litigation expenses, covering the flight to and single-night hotel stay for the default judgment hearing. (Doc. 12-1 at 6.) Courts typically permit prevailing parties to recover reasonable expenses that are "usually itemized and billed separately." *See Marmon v. RPS Auto, LLC*, No. CV 22-2381-KHV, 2024 WL 1961432, at *6 (D. Kan. May 3, 2024) (citing *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997)); *see also Mathiason*, 187 F. Supp. 3d at 1281. The court in *Marmon* considered travel expenses as non-taxable litigation expenses. *See Marmon*, 2024 WL 1961432, at *6. Thus, in line with *Marmom*, the court finds that counsel's requested traveling costs are non-taxable litigation expenses, and it also finds that the amount is reasonable. Therefore, the court awards $486.40 in litigation expenses.

      d. *Taxable Costs*

Lastly, Plaintiff requests $515.00 for the filing fee and the service of process fee. (Doc. 12-1 at 6.) Under 28 U.S.C. § 1920(1), taxable costs include "fees of the clerk and marshal." 28 U.S.C. § 1920(1). The language "[f]ees of the clerk" include filing fees, *see Johnson v. Studyvin*, No. CIV. A. 92-2292-JWL, 1994 WL 124004, at *2 (D. Kan. Mar. 8, 1994), and "[f ]ees of the . . . marshal" encompass the costs for service of process. *See Griffith v. Mt. Carmel Med. Ctr.*, 157 F.R.D. 499, 507 (D. Kan. 1994). Hence, Plaintiff is seeking to recover $515.00 in taxable costs. Federal Rule of Civil procedure 54(d) authorizes the "[t]axation of costs" and 28 U.S.C. § 1920

8

governs it. *See Johnson*, 1994 WL 124004, at *1. However, to recover taxable costs under § 1920(1), counsel must follow the procedures set forth in District of Kansas Local Rule 54.1(a). *See Marmon*, 2024 WL 1961432, at *6. Plaintiff has not done so. Therefore, the request for $515.00 in taxable costs is denied without prejudice.

### B. Defamation Damages

Plaintiff's claim for Defamation is based on Defendant's statement on her publicly available Drive-A-Check Report ("DAC Report") that she was terminated for truck abandonment. Plaintiff's unrebutted testimony indicates that at least as of late 2022, her DAC Report, which is accessible to trucking companies, falsely indicated truck abandonment as the reason for her termination from employment. Plaintiff also testified that she is aware of at least one employer comparable to FLI who refused to hire her because it learned (either from the DAC Report or directly from Defendant) that she had abandoned her truck. As such, the Court finds that Plaintiff has been damaged by Defendant's defamation in the form of lost job opportunities and reputational harm. Based on the foregoing, the court finds that an award of $10,000.00 in compensatory and special damages, and an award of $10,000.00 in punitive damages is appropriate for her claim of defamation.

## II. Conclusion

IT IS THEREFORE ORDERED that judgment is entered in favor of Plaintiff Michelle Miser and against Defendant Freight Logistics, Inc. in the amount of $129,846.73 in lost wages, compensatory damages, special damages, and punitive damages.

IT IS FURTHER ORDERED that Plaintiff Michelle Miser is awarded her attorneys' fees litigation expenses in the amount of $12,486.40.

IT IS FURTHER ORDERED that post-judgment interest shall accrue at the legal rate of 5.13% from the date of entry of this Final Judgment.

IT IS SO ORDERED.  Dated this 17th day of May, 2024.

                                                s/ John W. Broomes
                                                JOHN W. BROOMES
                                                UNITED STATES DISTRICT JUDGE