IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE MISER,

                Plaintiff,

v.                                                              Case No.  23-1265-JWB

FREIGHT LOGISTICS, INC.,

                Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to set aside the default judgment. (Doc. 25.)  The motion is fully briefed and ripe for decision.  (Docs. 25, 26, 28.)  The motion is DENIED for the reasons stated herein.

### I.    Facts and Procedural History[1]

Plaintiff worked as a truck driver for Defendant.  Defendant is a trucking company that was incorporated in Kansas and has its principal place of business there as well.

In the spring of 2022, Plaintiff became concerned she had an irregular heartbeat and scheduled an appointment with her primary care doctor.  Her primary care doctor referred her to a cardiac specialist, and her first appointment was scheduled on or around June 9, 2022.  Plaintiff was scheduled to deliver freight for Defendant on or around June 14, 2022.  Plaintiff successfully delivered the freight, and she dropped her unloaded truck at a truck stop in Nevada, Missouri.  This was a planned drop, as Plaintiff would leave her truck and the trailer at the truck stop until her next scheduled delivery.

---

[1] The background facts set forth herein are from the courts order on Plaintiff's motion for default judgment.  (Doc. 8.)

However, on June 15, 2022, Plaintiff's cardiologist informed her that it would be medically unsafe for her to work until she received further evaluation at Mercy Cardiology. The cardiologist informed her of this prognosis by sending a note. Plaintiff followed Defendant's protocol by informing the dispatcher that she was leaving the truck, as she could not safely drive with her medical condition. Plaintiff also informed Defendant about her medical status; she gave Defendant her doctor's note and told Defendant that she would provide regular updates on when she could return to work. Defendant sent a driver to pick up Plaintiff's truck.

Plaintiff was diagnosed with arrythmia and a slight murmur. In August of 2022, she underwent a cardiac procedure that successfully resolved these issues. Plaintiff was cleared to work around the end of November 2022. However, when she contacted Defendant about being cleared to work again, Defendant informed her that she would have to re-apply for the position because she had been out-of-work for more than 30 days. Plaintiff reapplied and was informed she was ineligible for the position because she had abandoned her truck in June. Additionally, Defendant reported that Plaintiff abandoned her truck while working for Defendant on her Drive-A-Check Report ("DAC").[2]

On the basis of these facts, Plaintiff brought two claims for wrongful termination under the Americans with Disabilities Act ("ADA") and one claim for defamation under Kansas state law against Defendant.

Prior to filing her complaint, she exhausted her administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2023. (Doc. 26-1 ¶ 3.) Plaintiff, through her attorneys, informed Defendant that she had filed a discrimination claim with the EEOC on March 24 or shortly thereafter. (*See id.*) On April 4, 2023,

---

[2] A DAC has information about a truck driver's employment history. It is common in the trucking industry, and trucking companies routinely check these reports when drivers apply for jobs.

an employee of Defendant, Daniel Bui, emailed Plaintiff's counsel to arrange a time to discuss "resolution options" for Plaintiff's case. (*See id.* ¶ 4, p. 4.) Plaintiff's counsel spoke to Mr. Bui on the phone, and on April 12, sent him a follow-up email about their phone conversation. (*Id.*) Plaintiff's counsel never received a response from Mr. Bui. (*Id.*) On September 18, counsel for Plaintiff requested a Notice of Right to Sue from the EEOC and received it on September 24, 2023. (*Id.* ¶ 5.) The EEOC also sent Plaintiff's Notice of Right to Sue to Defendant. (Doc. 26-1 at 6.)

Plaintiff filed her Complaint (Doc. 1) on December 14, 2023. Defendant was personally served the summons on December 28, 2023. (Doc. 3.) Defendant's Human Resources employee, Candy VanSteenburg accepted the summons. (*Id.*) However, she did not open the papers, but rather, passed them along to the owner of Defendant, Dave Gaggero. (Doc. 25-1 at 2.) The summons informed Defendant that it had 21 days to respond to Plaintiff's complaint. (Doc. 3 at 2.) Defendant did not respond to Plaintiff's complaint. However, Mr. Gaggero asserts that 15 days after Ms. VanSteenburg received the summons (on January 12, 2024) he called and left a voicemail for an attorney. (Doc. 25-1 ¶ 4.) Three days later on January 15, he called the attorney again—only to learn that he was out of the office. (*Id.*)

A week after the deadline to respond had passed, on January 25, Plaintiff filed an Application for Entry of Default and a Motion for Default Judgment. (Doc. 26-1 ¶ 7.) On February 2, Plaintiff's counsel sent Defendant—via certified mail—a copy of the Application for Entry of Default and the Motion for Default Judgment. (*Id.* ¶ 8.) Defendant received both items because the certified mail receipt was returned to Plaintiff's counsel on February 8 and was signed by Ms. VanSteenburg. (Doc. 26-1 ¶ 8.) After Plaintiff's counsel mailed the Application for Entry of Default and the Motion for Default Judgment, but before Defendant received them, Mr. Gaggero contacted a second attorney ("attorney #2") on February 5. (Doc. 25-1 ¶ 5.) At the time Mr.

Gaggero contacted attorney #2, he claims to have been unaware that the deadline to respond to Plaintiff's complaint had passed. (*Id.*) He allegedly provided a file to attorney #2 that contained Plaintiff's complaint and all of the documentation related to her employment with Defendant. (*Id.*) Four days later, on February 9, he reached out to attorney #2 to learn if he had reviewed the material. (*Id.* ¶ 6.) The attorney allegedly responded "yes." (*Id.*) Mr. Gaggero then provided him a summary of the facts of the case. (*Id.*) There is no indication that attorney #2 responded to Mr. Gaggero's summary. Nonetheless, Mr. Gaggero allegedly believed that after these brief communication with attorney #2, he would take the necessary steps to defend Defendant in Plaintiff's lawsuit. (*Id.*)

Plaintiff reached out to Defendant's employee, Mr. Bui, on March 7, inquiring into whether Defendant would be participating in the case. (Doc. 26-1. ¶ 9, p. 10.) Meanwhile, Mr. Gaggero emailed attorney #2 on March 4 and 7. (Doc. 25-1 ¶ 7.) On March 11, attorney #2 informed Mr. Gaggero that he was too busy to represent Defendant. (*Id.*) Mr. Gaggero understood this to mean that moving forward, attorney #2 could no longer represent Defendant. (*Id.*) Throughout March and April, he tried to find a different attorney. (*Id.* ¶ 8.)

The court granted Plaintiff default judgment on March 25, 2024. (Doc. 8.) The damages hearing occurred on April 29, 2024. (Doc. 13 at 1.) The court awarded Plaintiff $129,846.73 in damages and awarded her attorney's fees and costs. (Doc. 13 at 9.) Judgment was entered on May 17, 2024. (Doc. 13.) Following the court's final judgment, Plaintiff's counsel requested four writs of garnishment on entities they believed held assets that belonged to Defendant. (Doc. 26-1 ¶ 10.) Plaintiff's counsel also requested that the court serve Defendant with the Notice of Garnishments. (*Id.* ¶ 11.) Again, Defendant received the Notice of Garnishments, as Ms. VanSteenburg signed for them (*Id.* at 11)

However, Mr. Gaggero claims that the first time he learned about the garnishments was on June 25, 2024, when clients informed him that Defendant's accounts with them were being garnished. (Doc. 25-1 ¶ 9.)  Two days after Mr. Gaggero learned about the garnishments, he hired his current counsel, a Kansas City law firm, to represent Defendant. (*Id.* ¶ 10.)   Defendant has now moved to set aside the default judgment on the basis that its conduct in failing to appear is excusable neglect³ under Rule 60(b)(1).

## II.   Standard

Default judgment and the threat thereof "serves as an incentive to" participate in adjudicatory matters. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir. 1983).  Parties and their attorneys need to know that they are not "free to appear at their pleasure," and that they are held "to a reasonably high standard of diligence in observing the courts' rules of procedure." *Id.*

Under Rule 60(b)(1), the trial court has the discretion to set aside a final order of default judgment if the party's failure to participate was a result of mistake, inadvertence, or excusable neglect. *See* Fed. R. Civ. P. 60(b)(1); *see Cessna Fin. Corp.*, 715 F.2d at 1445; *see Thompson v. Kerr-McGee Ref. Corp.*, 660 F.2d 1380, 1385 (10th Cir. 1981).  In these matters, the movant bears the burden of demonstrating that a default judgment should be set aside. *See Greenwood Expls., Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1988).  And although setting aside a final judgment is an extraordinary procedure that should be used sparingly, courts are encouraged

---

³ Defendant's pleadings focus on excusable neglect rather than mistake or inadvertence.  In the motion to set aside judgment (Doc. 25), Defendant cites two cases wherein the court held that movant's failure to participate constituted excusable neglect.  (*Id.* at 6, 7.)  Indeed, Defendant begins its argument by identifying the excusable neglect factors. (*Id.* at 5.)  Hence, Defendant's justification for setting aside the judgment is excusable neglect. The court provides this clarification because Defendant also states in his motion: "Defendant's failure to respond was due to mistake, inadvertence, and/or excusable neglect."  (*Id.* at 7.)  This appears to be a bare recitation of Rule 60(b)(1), as the substance of Defendant's motion focuses on excusable neglect.  Indeed, Defendant's reply briefing focuses on excusable neglect and asserts that it "established sound cause for a finding of excusable neglect."  (Doc. 28 at 3.)

to liberally construe 60(b)(1) motions to ensure a case is decided on the merits. *See Greenwood Expls., Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1988).

To determine if a party's failure to participate constitutes excusable neglect, the following factors are considered: "danger of prejudice to the [opposing party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (citation omitted). If a party establishes that its failure to participate amounts to excusable neglect, then it must also "demonstrate the existence of a meritorious defense." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).

### III.    Analysis

Defendant, acknowledging that a Rule 60(b)(1) motion is an extraordinary remedy, argues that in this case, it is an appropriate remedy because its failure to participate is excusable neglect, and that the proper course of action would be to allow the case to be decided on the merits because it has meritorious defenses to Plaintiff's claims. Plaintiff argues to the contrary, alleging (1) Defendant's conduct does not amount to excusable neglect, and (2) that its defenses are not meritorious.

The court will first analyze the *Jennings'* factors to determine if Defendant's neglect is excusable. If it is, then the court will assess Defendant's defenses to Plaintiff's claims.

### A.    Prejudice

Plaintiff argues that she will be prejudiced if the court grants Defendant's motion to set aside judgment. (Doc. 26 at 9.) She argues that excusing Defendant's failure to participate will force discovery into 2025 and push the trial date back even further. (*See id.*) Had Defendant timely responded and followed the court's timeline, Plaintiff claims that discovery would most

6

likely be complete or nearly so. Additionally, Plaintiff claims she has incurred thousands of dollars in attorney's fees and costs because Defendant did not participate in the proceedings. Defendant does not address this factor in its motion to set aside the default judgment, nor does it respond to Plaintiff's alleged prejudice in its reply brief.

Without Defendant's arguments, the court must assess Plaintiff's prejudicial claims on its own. She is correct that Defendant's lack of participation will protract this lawsuit. The parties would have been in discovery and could be finishing it now or in the coming months. Plaintiff's argument about attorney's fees and costs also has merit. The court awarded attorney's fees and costs for the work her counsel had done prior to Defendant's motion to set aside the default judgment. The court will not inquire into Plaintiff and her attorney's compensation agreement, but it is not far afield that she is now incurring legal expenses that were not anticipated when the court entered final judgment in May. (Doc. 8.) Thus, the prejudice factor cuts in favor of Plaintiff.

### B.    Reason and Length of Delay

Plaintiff initiated her claim in March of 2023 when she filed her Charge of Discrimination with the EEOC. (Doc. 26-1 ¶ 3.) She then filed her complaint against Defendant in December of 2023. (Doc. 1.) Now, nearly a year after Plaintiff filed her complaint, Defendant has moved for the court to set aside its default judgment. Defendant argues that the delay occurred because Mr. Gaggero is unfamiliar with legal proceedings—more specifically with legal representation. (Doc. 25 at 7.) Defendant claims that Mr. Gaggero believed that attorney #2 was representing Defendant and responding to the court filings after he agreed to review the case filings. (*Id.*) Mr. Gaggero also believed that the matter had been resolved because he had received no communications from the court after attorney #2 informed Mr. Gaggero that he could not represent Defendant. (*Id.* ¶ 6.) By contrast, Plaintiff argues that Defendant provides no reason for why Mr. Gaggero believed

attorney #2 was representing Defendant. (Doc. 26 at 9.) Moreover, Plaintiff asserts that Defendant fails to explain why it delayed speaking with an attorney after it was served Plaintiff's complaint. In effect, Plaintiff's argument is that Defendant has no justifiable reason for its delay.

The court finds that Defendant does not have a justifiable reason for its delayed response in this lawsuit. First, the facts indicate that Mr. Gaggero did not need to be familiar with legal proceedings to know that he needed to respond to Plaintiff's complaint within 21 days of receipt. (Doc. 3 at 2.) The summons clearly and explicitly stated that Defendant had 21 days to respond. (*Id.*) Nor can Mr. Gaggero/Defendant claim ignorance of the proceedings. Plaintiff informed Defendant that she had filed a discrimination claim with the EEOC. (Doc. 26-1 ¶ 3.) One of Defendant's employees, Mr. Bui, contacted Plaintiff's counsel to allegedly resolve Plaintiff's claims before she filed a lawsuit. (*See id. ¶ 4.*) The EEOC sent Defendant Plaintiff's Notice of Right to Sue. (Doc. 26-1 at 6.) Defendant received the summons, (Doc. 3), and the human resources employee, Ms. VanSteenburg, passed it along to Mr. Gaggero. (Doc. 25-1 at 2.) Plaintiff's counsel sent via certified mail a copy of the Application for Entry of Default and the Motion for Default Judgment. (Doc. 26-1 ¶ 7.) And Defendant received both because Ms. VanSteenburg again signed the receipt. (*Id. ¶ 8.*) Knowing that his company, the Defendant, had to respond to Plaintiff's complaint within 21 days or face default judgment, Mr. Gaggero could have clarified with attorney #2 whether he would be filing a response or requesting an extension to file a response. Instead, according to Defendant's briefings, Mr. Gaggero relied on attorney #2's single word answer "yes" to his inquiry about reviewing the case as confirmation that attorney #2 would represent Defendant and file the proper responses, communicate with Plaintiff and her counsel, and ensure Defendant's interests were being served in court. The court can excuse some confusion about the legal profession and proceedings, but it cannot excuse Mr. Gaggero's failure

to clarify attorney #2's relationship with Defendant and seek additional legal help as it is documented that he received filings indicating that Plaintiff was moving for default judgment.

A court also considers, as part of the analysis on the reason for the delay, whether the movant had control over its delayed participation in the lawsuit. *See Jennings*, 394 F.3d at 856. Here, the court focuses on Defendant's choice of legal counsel, an aspect of the lawsuit entirely within Mr. Gaggero and Defendant's control. For example, a party controls when legal representation occurs, who the attorney will be, and how often they speak. In the present matter, Defendant did not seek legal counsel until fifteen days after receiving the summons. (Doc. 25-1 ¶ 4.) Mr. Gaggero attempted to contact the first attorney on January 12, and then three days later, on January 15. (Doc. 25-1 ¶ 4.) Upon learning that the attorney was out of the office and could not represent Defendant, Mr. Gaggero waited 21 days to contact attorney #2. (*Id.* ¶ 5.) By this point, the 21-day deadline to respond to Plaintiff's complaint had passed. Clearly, Defendant was not hastily searching for legal counsel. At this juncture, Defendant could have hired the law firm currently representing it, which would have been well before the court entered default judgment. Instead, Defendant and Mr. Gaggero relied on attorney #2, who, based on the evidence provided, never contractually confirmed that he would represent Defendant. Relatedly, Defendant and/or Mr. Gaggero controlled how often they spoke with attorney #2. If, as occurred here, an attorney is not responding, the party has at least two options: (1) persistently contact the attorney to learn more about the case, or (2) find a new attorney. Defendant did neither. To further illustrate that Defendant and Mr. Gaggero controlled their legal representation, within 48 hours of learning that Defendant's client accounts had been garnished, Mr. Gaggero contacted and began working with Defendant's current legal counsel. (Doc. 25-1 ¶¶ 9, 10.)

Additionally, the court notes the waste of judicial resources caused by Defendant's failure to timely engage and participate in this case.  The court has already considered and ruled on Plaintiff's motion for default judgment.  On top of that, the court expended considerable time preparing for and conducting a formal hearing on damages, all of which would have been unnecessary had Defendant simply answered the complaint and participated in the case.  There is nothing novel about being prepared to respond to legal claims; it is simply part of doing business in this country, yet Defendant approached its obligations in this case with an unusual disregard for the importance of timely participation in the case, or the potential consequences for failing to do so.

As for the timing of Defendant's Rule 60(b)(1) motion, it rightly asserts that the motion is timely.  A party has one year to file a Rule 60(b)(1) motion to set aside a final judgment from the date that the final judgment is entered.  Fed. R. Civ. P. 60(c)(1).  The court entered final judgment against Defendant on May 17, 2024.  (Doc. 8.)  Defendant filed its motion to set aside that default judgment on August 15, 2024—well within the one-year period.  (Doc. 25.)

Nonetheless, despite Defendant's timely motion, the court concludes that Defendant's reason for its delayed participation and its control over its legal representation outweighs that it timely moved to set aside the court's default judgment. Therefore, the court finds that the factors pertaining to the length and reason for that delay cut against Defendant.

## C.    Good Faith

Defendant argues that its failure to participate was made in good faith. Plaintiff disagrees. She asserts that Defendant's failure to participate was intentional because it ignored notices from the court and exerted little to no effort to actually participate in the proceedings.  (Doc. 26 at 11.)

10

Additionally, Plaintiff argues that the case law Defendant relies upon can be distinguished such that they do not support Defendant's position. (*See id.*)

The two cases Defendant relies upon are *HFR, Inc. v. Hildyard*, No. 05-2300-JWL, 2007 WL 4374174 (D. Kan. Dec. 13, 2007), and *Hoskinson v. High Gear Repair, Inc.*, No. 11-1190-JTM, 2012 WL 1232095 (D. Kan. Apr. 12, 2012). (*See* Doc. 25 at 5–7.) In *HFR, Inc.*, the court entered a default judgment against defendants, Victor and Brenda Hildyard, because they failed to make an appearance in the lawsuit. *See* 2007 WL 4374174, at *1. However, the court granted the Hildyards' Rule 60(b)(1) motion to set aside the default judgment because when the plaintiff served the Hildyards with the original complaint, they immediately sought legal counsel and were told that the plaintiff could not assert individual claims against them. *See id.* at *6. Because of this advice, when the plaintiff served them with an amended complaint, they still believed that they could not be personally liable for the claims. *See id.* The court concluded that this was a reasonable explanation for their delayed participation and that they had a good faith belief they could not be personally liable because of their counsel's advice. *See id.* In *Hoskinson*, the court entered a default judgment against defendant High Gear Repair, Inc. *See* 2012 WL 1232095, at *1. The court granted High Gear's Rule 60(b)(1) motion because the complaint misnamed the defendant as First Gear Repair, Inc., the newly hired secretary received but misplaced the summons, and the early demand letter described the plaintiff's accident as having occurred in a manner/place where High Gear could not be responsible. *Id*. Additionally, High Gear contacted legal counsel as soon as it learned of the default judgment. *See id.*

Defendant describes these two cases in its briefing but only provides two arguments as to why these cases support a finding that Defendant acted in good faith. The first is that Defendant claims to have had a good faith belief that it engaged counsel sooner than the defendant in

*Hoskinson*. (Doc. 25 at 7.) Defendant acknowledges that the defendant in *Hoskinson* technically hired counsel at an earlier stage in the legal proceedings than Defendant. (*Id.*) However, the difference, according to Defendant, is that it believed it had hired legal counsel prior to the court's entry of default judgment, whereas the *Hoskinson* defendant engaged legal counsel for the first time after default judgment. (*Id.*) Defendant's second argument is that it filed its Rule 60(b)(1) motion sooner than the defendants in *HFR, Inc.* It took Defendant three months, and the defendants in *HFR, Inc.* two years. 2007 WL 4374174 *6. Although not explicit, Defendant argues that if the court in *Hoskinson* and *HFR, Inc.* were willing to excuse those defendants' neglect because they committed the errors in good faith, then the court should also excuse Defendant's neglect because it believed, in good faith, that it had engaged an attorney well before default judgment was entered and its Rule 60(b)(1) motion was filed well before two years after judgment.

Plaintiff is correct that the facts from *Hoskinson* and *HFR, Inc.* can be distinguished from the facts of present case. However, the issue the court has identified with Defendant's use of *Hoskinson* and *HFR, Inc.* is that it relies on irrelevant facts from those cases. For example, in *HFR, Inc.*, the court excused defendants' neglect of failing to make an appearance because their legal counsel informed them that they could not be personally liable. *See id*. Here, Defendant received no such advice from legal counsel. Indeed, the evidence indicates that Defendant received no legal advice until after default judgment was entered and its client's accounts were garnished. And in *Hoskinson*, the court excused the defendant's neglect because a series of mistakes led it to believe that the plaintiff was/could not sue it: the new secretary misplaced the complaint, the complaint did not name the correct defendant, and the facts in the demand letter could not support a claim against the defendant. 2012 WL 1232095, at *1. Moreover, the defendant in *Hoskinson*

actually hired legal counsel after learning about the default judgment against it.  *Id.*  By contrast, Defendant cannot claim that it was unaware of Plaintiff's lawsuit or that it believed Plaintiff had no claim against it.  Defendant's representative Mr. Bui communicated with Plaintiff's counsel after Defendant received the EEOC Right to Sue letter, (Doc. 26-1 ¶ 4, p. 4.), and Ms. VanSteenburg received and delivered the Summons to Mr. Gaggero. (Doc. 3.)  Rather, Mr. Gaggero's mistake was a failure to ensure he had adequate legal representation—an aspect of the lawsuit in his control.  In other words, Defendant's arguments relying on *Hoskinson* and *HFR, Inc.* do not support the argument that Defendant's neglect should be excused because it was made in good faith.

Furthermore, the evidence indicates that Mr. Gaggero's efforts to participate in the case were minimal and not approached with the seriousness and degree of attentiveness that ought to arise when learning that your company has been sued in federal court.  Here, as discussed in Section III.B, Defendant knew about the lawsuit, but failed to hire legal counsel.  Defendant also failed to hire legal counsel with any vigor until its client accounts were garnished.  The court disagrees with Plaintiff's assertion that Defendant acted in bad faith.  Based on the evidence, it appears that Defendant's conduct does not amount to bad faith because it did not intentionally avoid participating in the case.  *See Mark v. United States*, No. 14-CV-0422-MV-KK, 2016 WL 8114217, at *5 (D.N.M. Sept. 20, 2016) (suggesting that intentionally failing to participate in a case would amount to bad faith).  Nonetheless, a party may still fail to act in good faith even if it does not act in bad faith.  *See id.*  For example, in *Mark v. United States*, the court found, in part, that the plaintiff failed to act in good faith because he ignored his case for five months and did not investigate why he did not receive confirmation that service of process had been completed.  *See id.*  Indeed, a party's behavior is highly determinant of whether it acted in good faith. S*ee Mayfield*

*v. Morris*, No. 17-0891 MV/SMV, 2020 WL 3832962, at *6 (D.N.M. July 8, 2020) (finding that a party acted in good faith when it attempted, even though it failed, to meet deadlines). Although Defendant attempted to engage legal counsel in order to participate in the case, the evidence demonstrates that it did so without zeal and failed to ensure that it had any meaningful representation, much less actual representation. Additionally, based on the evidence, Defendant periodically received information about the case, yet it failed to act until there were actual consequences. Thus, while the court finds that Defendant did not act in bad faith, it concludes that Defendant did not act in good faith.

## IV.    Conclusion

After weighing the parties' arguments and the *Jennings* factors, the court finds that Defendant's delayed participation in the proceedings does not amount to excusable neglect. Except for the timeliness of its Rule 60(b)(1) motion, the other *Jennings* factors favored denial. Because the court does not excuse Defendant's neglect, the court need not address its alleged meritorious defenses. THEREFORE, relief under Rule 60(b)(1) is not warranted, and Defendant's motion is DENIED.

IT IS SO ORDERED. Dated this 22nd day of November, 2024.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

14